UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. J06-00556-DMD<br><br>BROCK MATTHEW WEIDNER,<br><br>Debtor. | Chapter 7<br><br>**Filed On**<br>**2/1/08** |
| BROCK MATTHEW WEIDNER,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA COMMUNICATIONS SYSTEMS GROUP, INC.,<br><br>Defendant. | Adversary No. J07-90005-DMD |

**MEMORANDUM DECISION**

The plaintiff's complaint for sanctions against Alaska Communications Systems Group, Inc. ("ACS"), for violation of the automatic stay came before the court for trial on January 24, 2008. This court has jurisdiction under 28 U.S.C. § 1334(b) and the district court's order of reference. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).[1] I find for the plaintiff in the sum of $250.00.

Brock Weidner is a bankruptcy attorney residing in Juneau. ACS offers telephone and Internet service in Juneau and has an office across the street from Weidner's. The parties had a contentious relationship and, before filing for bankruptcy, Weidner had voiced frequent complaints at ACS's Juneau office. He contacted the ACS office with various grievances on August 16, October 18 and in early December of 2006. Weidner filed

---

[1] *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 616-17 (9th Cir. 1993).

his chapter 7 petition on December 18, 2006. He "forgot" to list ACS as a creditor on his initial schedules. As a consequence, ACS wasn't served with a copy of the Bankruptcy Court's Notice of Chapter 7 Case, Meeting of Creditors & Deadlines ("the § 341 notice"),[2] which was mailed to all Weidner's scheduled creditors on December 23, 2006.[3]

Unaware of the bankruptcy filing, ACS sent a "dunning notice" to Weidner on January 17, 2007. This led to a flurry of activity. The "dunning notice" was apparently followed by a "wireless auto dialer" call to Weidner's cell phone on January 23, 2007. The auto dialer call requested that Weidner contact ACS customer service. Weidner went to the Juneau ACS office on January 23, 2007. He paid his post-petition bill of $191.92 and hand-delivered a copy of his § 341 notice to the ACS customer service representative who handled the payment transaction. Weidner then amended his schedules to include ACS as an unsecured creditor.[4]

Amy Neulen, an Anchorage ACS employee, checked to see if ACS was listed on Weidner's bankruptcy mailing matrix through an inquiry on January 24, 2007. ACS wasn't listed on the matrix, even though Weidner had amended his schedules the previous day.[5] ACS sent a written bill to Weidner on January 28, 2007, which requested payment of $469.35 by February 20, 2007. The bill also stated, "Your account is past due. Please pay the past due amount to avoid interruption of service." This angered Weidner. After a series

---

[2] *See* Docket No. 7, filed in Main Case No. J06-00556-DMD on Dec. 21, 2006.

[3] *See* Docket No. 12, filed in Main Case No. J06-00556-DMD on Dec. 23, 2006.

[4] *See* Docket No. 18, filed in Main Case No. J06-00556-DMD on Jan. 23, 2007.

[5] The matrix was amended by Weidner substantially later. *See* Docket No. 24, filed in Main Case No. J06-00556-DMD on March 23, 2007.

2

of irate calls and faxes to ACS, he initiated this adversary proceeding against ACS on February 8, 2007, seeking damages and injunctive relief.

A hearing on Weidner's request for injunctive relief was scheduled for February 12, 2007. Prior to the hearing, ACS's attorney Michael Parise advised Weidner that ACS did not intend to interrupt Weidner's phone or Internet service. At the February 12 hearing, after the parties presented evidence, I concluded that Weidner was not entitled to a temporary restraining order. During the hearing, ACS acknowledged that it was a creditor and that it would not disconnect Weidner's phone or Internet service.

11 U.S.C. § 362(k)(1) provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

To find a willful violation of the stay, all that is required is that the creditor knew of the stay and that its actions which violated the stay were intentional.[6] A creditor's good faith belief that its conduct was justified is irrelevant to the determination of a stay violation.[7]

Here, there was a technical violation of the stay by ACS. Although Weidner hadn't initially listed ACS as a creditor, he did give ACS written proof of his bankruptcy filing on January 23, 2007. Subsequent to receiving this notice, ACS sent a bill to Weidner on January 28, 2007, demanding payment. The fact that ACS was not listed as a creditor

---

[6] *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992).

[7] *Id.*

3

does not excuse this conduct. The bill ACS sent to Weidner on January 28 constituted a violation of the automatic stay under 11 U.S.C. § 362(a)(6)[8] because ACS knew about Weidner's bankruptcy when it sought payment for its prepetition services. ACS's position, that the stay didn't impact it because it hadn't yet been scheduled as a creditor in Weidner's bankruptcy case, was erroneous. Once ACS learned of Weidner's bankruptcy, it was subject to the automatic stay regardless of whether its claim was scheduled or not. In fact, even if Weidner had never scheduled ACS as a creditor in this case, its claim would still be discharged.[9] In a no-asset chapter 7 case such as Weidner's, where no claim bar date was ever set, a debtor's failure to schedule an otherwise dischargeable claim will not serve to except that debt from discharge.[10]

Under 11 U.S.C. § 362(k)(1) a debtor is entitled to actual damages, including costs and attorney's fees, if injured by a stay violation. I will limit Weidner's damages to $250.00, the amount of the adversary filing fee. No further damages will be awarded for a number of reasons. First, ACS never cut off Weidner's telephone or Internet service. Second, as provided under § 366(b), ACS could have requested a security deposit from Weidner before continuing to provide post-petition services, but did not do so. Finally, as Weidner represented himself, he has no out of pocket expense for attorney's fees.

---

[8] Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case."

[9] *See White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 926-27 (9th Cir. 2004); *Beezley v. Calif. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1435-37 (9th Cir. 1993).

[10] *Nielsen*, 383 F.3d at 926-27; *Beezley*, 994 F.2d at 1435-37.

4

An order and judgment will be entered consistent with this memorandum decision.

DATED: January 31, 2008.

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: B. Weidner, Esq.
 M. Beckwith, Esq.
 P. Gingras, Adv. Case Mgr.  - served 1/31/08 – pg.

 02/01/08